UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
UNITED STATES OF AMERICA           JUDGMENT INCLUDING SENTENCE
        -v-                        UNDER THE SENTENCING REFORM ACT

MICHELLE GUMBS                     CASE NUMBER: CR-03-963 (ARR)
----------------------------------------x   DAWN M. CARDI, ESQ
                                   2 PARK AVENUE, 17th FL.
                            P.M. _____   NEW YORK, NEW YORK 10016
                            TIME A.M. _____   Defendant's Attorney & Address

THE DEFENDANT:
XXX  pleaded guilty to count one of the indictment.
___  was found guilty on counts                  after a plea of not guilty.
     Accordingly, the defendant is ADJUDGED guilty of such count(s), which involve the
following offenses:

| TITLE & SECTION | NATURE & OFFENSE | COUNT NUMBER(S) |
|---|---|---|
| 21 USC 952(a) & 960(b)(3) | IMPORTATION OF COCAINE | ONE (1) |

The defendant is sentenced as provided in pages 2 through    of this Judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

___  The defendant has been found not guilty on count(s)       and is discharged as
     to such count(s).
XXX  Remaining counts are dismissed on the motion of the United States.
___  It is ordered that the defendant shall pay to the United States a special
     assessment of $100.00 which shall be due XXX immediately ___ as follows:

It is further ORDERED that the defendant shall notify the United States Attorney for this
district within 30 days of any change of residence or mailing address until all fines,
restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec # _____          OCTOBER 6, 2005
                                           Date of Imposition of Sentence
Defendant's Date of Birth 8/29/77

                                           _____
Defendant's Mailing Address:               ALLYNE R. ROSS, U.S.D.J.

3239 WILSON AVENUE                         OCTOBER 6, 2005
                                                  Date
BRONX, NEW YORK 10469
                                           A TRUE COPY ATTEST
Defendant's Residence Address:             Date: _____
                                           ROBERT C. HEINEMANN
       ( SAME AS ABOVE )                   CLERK OF COURT

                                           By: _____

                                                DEPUTY CLERK

PROBATION

The defendant is hereby placed on probation for a term of <u>three (3) years</u>.

While on probation, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page). If this Judgment imposes a fine or a restitution obligation, it shall be a condition of probation that the defendant pay any such fine or restitution. The defendant shall comply with the following additional conditions:

1) DEFT SHALL SERVE SIX (6) MONTHS HOME DETENTION.

2) DEFT SHALL MAINTAIN FULL-TIME VERIFIABLE EMPLOYMENT AND/OR SHALL PARTICIPATE IN AN EDUCATION OR VOCATIONAL TRAINING PROGRAM AS DIRECTED BY THE PROBATION DEPARTMENT.

3) DEFT SHALL NOT INCUR ANY NEW LINES OF CREDIT WITHOUT THE PERMISSION OF THE COURT OR OF THE PROBATION DEPARTMENT.

4) DEFT SHALL PARTICIAPTE IN SUBSTANCE ABUSE TREATMENT WITH A TREATMENT PROVIDER SELECTED BY THE PROBATION DEPARTMENT. TREATMENT MAY INCLUDE OUTPATIENT OR RESIDENTIAL TREATMENT AS DETERMINED BY THE PROBATION DEPARTMENT. DEFT SHALL ABSTAIN FROM ALL ILLEGAL SUBSTANCES AND/OR ALCOHOL. DEFT SHALL CONTRIBUTE TO THE COST OF SERVICES RENDERED VIA CO-PAYMENT OR FULL PAYMENT IN AN AMOUNT TO BE DETERMINED BY THE PROBATION DEPARTMENT, BASED UPON THE DEFT'S ABILITY TO PAY AND/OR THE AVAILABILITY OF THIRD PARTY PAYMENT.

5) DEFT SHALL PARTICIPATE IN A MENTAL HEALTH TREATMENT PROGRAM APPROVED BY THE PROBATION DEPARTMENT. DEFT SHALL CONTRIBUTE TO THE COST OF SERVICES RENDERED OR ANY PSYCHOTROPIC MEDICATIONS PRESCRIBED VIA CO-PAYMENT OR FULL PAYMENT IN AN AMOUNT TO BE DETERMINED BY THE PROBATION DEPARTMENT, BASED UPON THE DEFT'S ABILITY TO PAY AND/OR THE AVAILABILITY OF THIRD PARTY PAYMENT.

6) DEFT SHALL NOT POSSESS ANY FIREARMS.

STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;
2) the defendant shall not leave the judicial district without the permission of the court or probation officer;
3) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5) the defendant shall support his or her dependents and meet other family responsibilities;
6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;
8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

These conditions are in addition to any other conditions imposed by this

1    THE COURT:  In this case, the guidelines analysis is
2 not in dispute.  The Probation Department and the parties
3 agree that under a correct application of the guidelines,
4 defendant's offense level is 17 and her criminal history
5 category is I.  This yields a range of imprisonment of 24 to
6 30 months.
7        Defense counsel argues that various recognized
8 grounds for departure under the guidelines, specifically
9 extraordinary family circumstances, diminished capacity,
10 aberrant behavior and post arrest rehabilitation or at least
11 the combination of those grounds in this case, are amply
12 documented by the record to warrant a substantial downward
13 departure from Ms. Gumbs' guidelines, indeed, a departure to a
14 non-incarceratory sentence.
15       Alternatively, counsel urges that analysis of the
16 pertinent statutory factors enumerated in Section 3552(a) in
17 the particular circumstances of this case warrants a
18 non-guideline sentence with multiple remedial components but
19 one which is also non-incarceratory.
20       Although the facts of record are not in every
21 respect fully consonant with the demands of all of the stated
22 grounds for departure under the guidelines, I am inclined to
23 agree with counsel that at a minimum, the combination of the
24 stated grounds warrants the relief sought.
25       In any event, it is clear to me that a statutory

7

1  analysis that is a non-guidelines sentence that considers the
2  guidelines as an element or factor fully justifies a sentence
3  akin to that advocated by defense counsel.
4        Because the record of facts supporting this result
5  is, of course, the same as the facts to be drawn upon in a
6  traditional guideline departure analysis, I believe it's
7  sufficient to proceed with the statutory analysis which will
8  inevitably incorporate much of the material also pertinent to
9  a departure analysis.
10        At the outset I have considered the guidelines
11  analysis previously discussed. I have also considered the
12  history and characteristics of the defendant.
13        As fully documented in the presentence report and
14  supplemented by defense counsel's submission, defendant is
15  financial supporter and primary caregiver of her 16-month old
16  daughter Sade. Apparently as a result of her premature
17  delivery, Sade has suffered multiple life-threatening
18  conditions and although recently somewhat improved continues
19  to require intensive care and attention for serious persisting
20  medical problems. These include a serious gastro esophageal
21  reflux condition causing the child to experience violent
22  choking episodes prompting biweekly pediatrician appointments
23  and a number of visits to the emergency room. The condition
24  still requires treatment with several medications and that her
25  head be elevated for 45 minutes after every feeding.

STEPHANIE DREXLER, RPR
OFFICIAL COURT REPORTER

Sade has also experienced severe bronchial problems for which she also remains on medications including multiple nebulizer treatments daily and an inhaled steroid. Sade's pediatrician states that: "Sade is a complicated infant to care for and proper care requires significant time and effort. Her mother is a responsible and dedicated caregiver and her commitment to Sade is evident."

The government observes that since defendant returned to full-time employment approximately five months ago: "Sade has been competently cared for by others during the day." Although this is not contested since defendant acknowledges that she has secured daytime child care, there is no evidence that a competent caregiver is available in the evenings or overnight particularly given Sade's persistent vomiting, choking and respiratory ailments.

The government urges that defendant's family members could provide needed care while defendant is incarcerated. But the presentence report relates that defendant's mother has expressed an inability to do so since she panics when Sade has an emergency. Further, defendant's mother works full time and cares for two other minor children ages 16 and seven.

There is no basis to believe that the family would be in a position to afford independent 24-hour care for Sade were defendant incarcerated.

Based on Sade's life-threatening health problems and

1  need for constant, competent supervision, coupled with Sade's
2  doctor's report that defendant is a responsible and competent
3  caregiver, the Probation Department has recommended that
4  defendant receive a non-incarceratory sentence.  In my
5  experience, such a recommendation by the Probation Department
6  is very unusual if not unprecedented.
7       The record also establishes severe emotional
8  problems experienced by the defendant herself.  The defense
9  has submitted three reports documenting multiple examinations,
10  treatment and testing by three mental health professionals, a
11  psychiatrist, a neuro psychologist and a clinical
12  psychologist.  All of the doctors concur that defendant
13  suffers from identified mental impairments that according to
14  Dr. Dorfman give rise to "an extreme if not pathological
15  susceptibility to manipulation by others," explaining how
16  defendant was so "easily manipulated and exploited by others"
17  in connection with her criminal conduct in this case.
18       All three medical professionals also found defendant
19  profoundly depressed, lonely and isolated and two made
20  reference to the presence of suicidal ideation based in part
21  on such findings.  All three doctors expressed the opinion
22  that incarceration would be extremely deleterious to defendant
23  negatively impacting her condition and significantly
24  endangering her both psychologically and physically.
25       One characterized as "disastrous" the long-run

1 consequences to defendant and her child were defendant to be
2 incarcerated.
3     Significantly too Dr. Dorfman concluded defendant
4 showed no personality conditions such as anti-social
5 personality disorder predisposing her to future criminal
6 behavior.
7     Addressing the defendant's requested departure on
8 the grounds of diminished capacity, the government contends
9 that even assuming the existence of a substantial mental
10 impairment, no evidence supports the claim that defendant's
11 condition impaired her ability to control her wrongful
12 conduct. The government does not discuss the conclusions of
13 each of the doctors that defendant's conditions leave her
14 extremely vulnerable, easily influenced and open to
15 manipulation by others whom she trusts.
16     This inference is made most explicit in Dr.
17 Dorfman's report that defendant's mental handicaps explain how
18 she was so "easily manipulated and exploited by others in the
19 drug possession case which has led to her current legal
20 problems." But even assuming that this evidence, albeit
21 undisputed by the government, were insufficient to establish
22 the causal nexus required by guideline 5K2.13, it is
23 nonetheless relevant in assessing the characteristics of the
24 defendant.
25     Also of significance is defendant's strong,

1  consistent history of gainful employment commencing when she
2  left college in 1999 and interrupted only by a three-month
3  period during the summer of 2004 and a period commencing in
4  December of last year when she stopped working to devote
5  herself full time to the care of her daughter.  Notably, for
6  approximately a year between mid 2003 and mid 2004 she worked
7  two jobs simultaneously, one full time and one part time.
8         Notably too since the birth of her daughter,
9  defendant completed her studies in phlebotomy and is now
10 employed full time earning approximately $30,000 per year by
11 which she supports herself and her daughter.
12        It is also worth observing that the progress
13 defendant has made since her arrest in this case in her
14 devotion to the care of her ill infant daughter, her personal
15 progress through psychiatric counseling, her completion of her
16 studies in phlebotomy and her acquisition of full-time
17 employment in that field all evidence very substantial post
18 arrest rehabilitation.  Even if this evidence were to fail to
19 meet the high threshold for extraordinary post arrest
20 rehabilitation, it too is nonetheless of significance in
21 assessing statutory factors bearing on defendant's sentence.
22        Finally, defendant is 26 years old and has not
23 previously been incarcerated.  Although apart from traffic
24 offenses, she has had two prior brushes with the law, they do
25 not raise any serious concern regarding her ability or

1   motivation to lead a law-abiding life.

2         One of the two arrests occurring five years ago
3   resulted in a conviction for disorderly conduct for which she
4   received a $75 fine. The other for criminal impersonation did
5   not appear on her NCIC report and no further information
6   regarding it is available.

7         Turning to the nature and circumstances of the
8   offense of conviction, defendant acted as a courier
9   transporting a quantity of cocaine into the United States from
10  Guyana in a false side of her suitcase. Unlike the typical
11  courier, however, her trip was not made in the expectation of
12  receiving a fixed sum for the payment of her services.
13  Rather, she received only the benefit of the round-trip ticket
14  coupled with some spending money, circumstances which the
15  government does not dispute.

16        Pertinent too is the psychiatric evidence discussed
17  above supporting the conclusion of medical experts that
18  defendant's specific identifiable mental deficiencies rendered
19  her vulnerable and easily manipulated. Dr. Dorfman
20  specifically cited her vulnerability to the man who involved
21  her in the instant offense. Apparently this individual
22  treated the defendant deceitfully even identifying himself by
23  a fictitious name.

24        The sentencing statute, 18 U.S.C. Section 3553(a),
25  directs Courts to impose a sentence "sufficient but not

STEPHANIE DREXLER, RPR
OFFICIAL COURT REPORTER

13

greater than necessary to comply with" the enumerated purposes of sentencing. Specifically, the sentence should reflect the seriousness of the offense, promote respect for the law and provide for just punishment.

The offense defendant committed is surely a serious one but the need for incarceration to promote respect for the law and provide just punishment is substantially tempered by the particular facts reviewed above pertaining to defendant's history and characteristics -- specifically, and most importantly, the grave needs of defendant's infant daughter, whose health and life could be jeopardized were she deprived of defendant's care, coupled with defendant's own serious psychological problems and her consistently strong work ethic and recent accomplishment in educating herself for and securing full-time employment in a vocation yielding compensation sufficient to support herself and her ill child.

The sentencing goals of adequate deterrence and protection of the public from further crimes of the defendant are in the circumstances of this case also served by a non-incarceratory sentence. Relevant here as reviewed above are the personal characteristics which render recidivism by this defendant highly unlikely, a conclusion strengthened by expert evidence that defendant manifests no personalty traits predisposing her to future criminal conduct.

The need for general deterrence is also satisfied,

1  in part based on the particular circumstances of the offense
2  committed, that is, the negligible benefit to defendant from
3  her participation in the crime and her motive for
4  participating which according to the doctors' reports was
5  substantially influenced by her precarious and vulnerable
6  mental state. More importantly, I believe the goal of general
7  deterrence is in this case simply outweighed by the
8  significance of the above cited facts concerning the condition
9  of her daughter militating against an incarceratory sentence.
10     Further, the need to avoid unwarranted sentencing
11 disparities is satisfied by the many respects in which this
12 offender, even if not her offense, is unusual.
13     Finally, as emphasized by the experts, the need to
14 provide defendant with training, care and other treatment in
15 the most effective manner are best served by doing so in a
16 non-incarceratory sentence.
17     I, therefore, will follow the recommendation of the
18 United States Probation Department and sentence the defendant
19 to three years probation with the following special
20 conditions: The defendant shall serve six months home
21 detention, that will not interfere with her work because that
22 can be worked out with the Probation Department. The
23 defendant shall maintain full-time verifiable employment and
24 will participate in educational or vocational training as
25 directed by the Probation Department. She shall not incur any

new lines of credit without the permission of the Probation Department.

The defendant shall participate in substance abuse treatment with a treatment provider selected by the Probation Department, treatment may include outpatient or residential treatment. The defendant shall abstain from all illegal substances and/or alcohol and contribute to the cost of services rendered by a co-payment or full payment in an amount to be determined by the Probation Department based on defendant's ability to pay and/or the availability of third-party payment.

The defendant shall participate in a mental health treatment program with a treatment provider selected by the Probation Department and contribute to the cost of services rendered or any psychotropic medications prescribed via co-payment or full payment in an amount to be determined by the Probation Department based on her ability to pay and/or the availability of third-party payment.

Obviously, I prohibit the possession of a firearm.

I make a finding that she is unable to pay a fine but I will impose the mandatory $100 special assessment.

As I recall, there are no open counts, is that right? Count Two remains open.

MS. JONES: The government moves to dismiss the remaining counts.

1   THE COURT: The motion is granted.
2   Ms. Gumbs, there are circumstances in which a
3 defendant may appeal a sentence; I don't believe it applies in
4 your case.  You discuss that with your lawyer and if you
5 choose to appeal, a notice of appeal must be filed within ten
6 days and undoubtedly, she would continue to represent you.
7   MS. CARDI: Thank you.
8   MS. JONES: Thank you.
9   (The matter was concluded.)